IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------- :
DANA PAUL :
: CASE NO. 1:10 CV 1594
Plaintiff :
:
-vs- :
:
KAISER FOUNDATION HEALTH PLAN : MEMORANDUM OF OPINION AND
OF OHIO : ORDER GRANTING DEFENDANT'S
: MOTION FOR JUDGMENT ON THE
Defendant. : PLEADINGS
------------------------------------------------------- 

UNITED STATES DISTRICT JUDGE LESLEY WELLS

Plaintiff Dana Paul, a member of the Office & Professional Employees International Union ("OPEIU"), initiated this employment discrimination lawsuit in Cuyahoga County Court of Common Pleas after she was terminated from her position at Kaiser Foundation Health Plan of Ohio ("Kaiser"). Ms. Paul's Complaint alleges state law claims of disability discrimination and retaliation against Kaiser under O.R.C. §4112.02(A) and §4112.99. (Docket. #1). Defendant Kaiser removed the case to this Court and now seeks Judgment on the Pleadings. (Docket # 4). A response and reply have been filed. (Docket # 7, 8).

This Court will first address the jurisdictional question of whether Ms. Paul's state law claims are preempted by the Labor Management Relations Act (LMRA). Kaiser claims its removal to this Court was proper, asserting that Section 301 of the LMRA

preempts Ms. Paul's state law claims and that this preemption provides the Court with subject matter jurisdiction. (Docket #4). Ms. Paul contends there is no preemption and seeks to have her state law claims remanded to the Cuyahoga County Court of Common Pleas. (Docket #7).

Kaiser next seeks the dismissal of Ms. Paul's newly converted LMRA claims, asserting that Ms. Paul failed to exhaust the grievance procedures enunciated in the governing CBA. (Docket #4).[1] Ms. Paul maintains that she did exhaust the grievance procedures, specifically contending that she was not required to arbitrate her claim. (Docket #7).

For the reasons set forth below, the Court will find as a matter of preemption that it possesses subject matter jurisdiction. Furthermore, the Court will dismiss Ms. Paul's LMRA claims pursuant to Rule 12(c) for failure to exhaust her administrative remedies under the CBA.

### 1. Background

Ms. Paul worked for Kaiser as a Radiology Technologist from 1997 to 2002 primarily responsible for performing diagnostic x-rays, and then as a CT Technologist from 2002 to 2009 primarily responsible for performing CT scans. (Dolbin Aff., ¶6). In 2006, Paul suffered work-related injuries, which limited her ability to move and lift heavy objects. (Paul Aff., ¶4).

---

[1] This Circuit treats a motion to dismiss for failure to exhaust remedies in the §301 context as a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). See Moir v. Greater Cleveland Regional Transit Authority, 895 F.2d 266 (6th Cir. 1990).

In January of 2009, Kaiser decided to abolish the CT Technologist position and create a new position entitled CT Rad Tech, which combined the duties of Radiology Technologist and CT Technologist.  (Dolbin Aff., ¶7).  This new position would require Ms. Paul to perform diagnostic x-rays, which, due to her injuries, she could not perform by herself.  (Paul Aff., ¶4).  In anticipation of transferring to this new position, Ms. Paul completed a form entitled "Request for an Accommodation" in which she stated:

> Unable to lift pts. to position for Diagnostic X-ray.  Very physically demanding job.  X2-fusion of cervical spine, I am afraid of harming a member for an exam or harming myself.  Unable to work without assistance.  Can not work 3rd shift or whenever I would be the only Diagnostic technologist.  In cat scan there is no multiple positioning and lifting.  I am able to perform my current job.  In near future being told to work in diagnostic Area.  Can not do this with my disability. Ask for accommodations.

(Supp. Dolbin Aff. ¶2; Exhibit 14).

Upon receiving the above form, Kathy Dolbin, Senior Human Resources Consultant at Kaiser, informed Ms. Paul that she could not simply perform the functions of her former position as CT Technologist.  (Dolbin Aff., ¶13; Exhibit 6).  Ms. Dolbin did indicate, however, that Kaiser wanted to explore other accommodations, such as transferring Ms. Paul to the heavily staffed day shift and exempting her from working the least staffed shifts.  (Dolbin Aff., ¶13; Exhibit 7).  Ms. Dolbin relayed this information to OPEIU,  Ms. Paul's union, in early June 2009.  (Dolbin Aff., ¶16).  However, OPEIU notified Ms. Dolbin that the proposed transfer and exemption for Ms. Paul might violate the CBA between the parties.  (Dolbin Aff., ¶18).  On 24 July 2009, Kaiser asked Ms. Paul's colleagues if they would change shifts with Ms. Paul and work holidays and

3

weekends for her.  (Dolbin Aff., ¶19; Exhibit 9).  None of Ms. Paul's colleagues volunteered.  (Dolbin Aff., ¶19).

On 12 August 2009, Ms. Dolbin informed Ms. Paul that Kaiser could not accommodate her and placed her on a leave of absence.  (Dolbin Aff., ¶20; Exhibit 10).  Ms. Dolbin's stated reason was that Ms. Paul could not perform the functions of the newly formed CT Rad Tech position.  Id.

On 26 August 2009, Ms. Paul filed a Step One grievance with her supervisor challenging Kaiser's decision to place her on a leave of absence.  (Dolbin Aff., ¶22; Exhibit 11).  Kaiser denied the grievance.  Id.  Ms. Paul appealed to the Second Step, alleging Kaiser discriminated against her based on her handicap, but Kaiser denied the grievance.  (Dolbin Aff., ¶23; Exhibit 12).  Ms. Paul appealed to the Third Step where her grievance was also denied.  Id.  Although the CBA provides for arbitration after the Third Step, Ms. Paul never arbitrated her claim.  (Dolbin Aff. ¶24; Exhibit 12).  Ms. Paul was placed on "unpaid status," effective on 5 September 2009.  (Paul Aff., ¶12; Exhibit 6).

Even though the above facts are undisputed, Ms. Paul and Kaiser disagree about the events surrounding Ms. Paul's termination.  Ms. Paul claims that she was capable of performing the essential duties of the CT Rad Tech position and the only 'accommodation' she requested was to stay on second shift and maintain the status quo.  (Paul Aff., ¶5; Dolbin Aff., Exhibit 2).  Ms. Paul alleges that Kaiser intentionally misinterpreted her requests as unreasonable accommodation requests in order to justify her termination.  Ms. Paul contends her termination was actually motivated by disability discrimination and retaliation.  (Response, pg. 4).

4

## II. LAW AND ANALYSIS

**A. Subject Matter Jurisdiction, Section 301 of the LMRA, and Preemption**

The Court must first examine if it has subject matter jurisdiction for removal. Subject matter jurisdiction arises in an instance where section 301 of the LMRA preempts a Plaintiff's state law claims. Allis-Chalmers, 471 U.S. at 210-211. LMRA preemption causes dismissal of the state law claims. Section 301 of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

The United States Supreme Court has held that Section 301 preempts state law rules that substantially implicate the meaning of the terms of a collective bargaining agreement. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210 (1985); DeCoe v. General Motors Corp., 32 F.3d 212, 216 (6th Cir. 1994). To determine whether a particular state law cause of action is preempted by Section 301 and the relevant labor contract, a court must inquire "whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." Id. at 213. If evaluation of a state law claim requires a court to construe the terms of a collective bargaining agreement or examine the employment relationship of parties to such an agreement, the state law claim is preempted. DeCoe, 32 F.3d at 216, 218; Workman v.

5

United Fixtures Co., 116 F.Supp.2d 885, 895 (W.D.Mich 2000).

The Sixth Circuit has developed a two-step approach for determining whether Section 301 preemption applies:

> First, the district court must examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms. Second, the court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law. If the right both is borne of state law and does not invoke contract interpretation, then there is no preemption. However, if neither or only one of the criterion is satisfied, section 301 preemption is warranted.

DeCoe, 32 F.3d at 216.

### B. Preemption and Dismissal of Ms. Paul's Claims

Applying the above analysis to the present case, Ms. Paul's claims require the interpretation of the CBA to which she is a party and are therefore preempted by Section 301 of the LMRA. Ms. Paul's state law claims must be dismissed.

Ms. Paul alleges that Kaiser denied her reasonable disability accommodations and then terminated her for having sought these accommodations. (Compl. ¶16, 23). To prove these discrimination and retaliation claims, Ms. Paul must show that her requested accommodations were reasonable. This, in turn, requires an interpretation of the CBA because "[a]ccommodations are not reasonable if they 'would usurp the legitimate rights of other employees in a collective bargaining agreement.'" Adams v. Potter, 193 Fed. Appx. 440, 445 (6th Cir. 2006)(citing Jasany v. United States Postal

6

Serv., 755 F.2d 1244, 1252 (6th Cir. 1985)).[2] Indeed, employers are not required to violate the terms of a CBA to make accommodations for a disabled employee. Droste v. Kroger Co., 1999 U.S. App. LEXIS 17953, at *5 (6th Cir. July 26, 1999). The CBA in this case contains multiple provisions that may render Ms. Paul's requests for accommodation unreasonable under Ohio discrimination law and that therefore, must be interpreted by a court examining her state law claims.

The governing CBA addresses seniority and work schedule conflicts (Art. VI, §5) and the creation and deletion of employment positions (Art. XXXI, §2, §4). (Exhibit B, pg. 8, 46-48). Indeed, these CBA provisions overlap and intersect with Ms. Paul's accommodation requests.[3] Ms. Paul implicitly requested that Kaiser exempt her from working weekends and holidays, allow her to be on the shift with the most technicians, and always accommodate her in the event she found herself working alone.[4] Because the CBA mandates that work schedule conflicts are governed by seniority (Exhibit B, pg. 8), accommodating Ms. Paul's work schedule request may have violated the seniority rights of other employees and therefore, would have been unreasonable. Indeed, "[r]equested accommodations which would interfere with the bona fide seniority rights of

---

[2] The Ohio Supreme Court has held that given the similarity between the ADA and the Ohio handicap discrimination law, regulations and cases interpreting the ADA can be used to interpret the Ohio law. Columbus Civil Serv. Comm. V. McGlone, 82 Ohio St. 3d 569 (1998).

[3] Although Ms. Paul contends that she did not make any accommodation requests, the Court cannot accept her account of the events in question because it is inconsistent with undisputed facts. Unlike a Rule 12(b)(6) analysis, under which the existence of genuine issues of material fact warrants denial of the motion to dismiss, "the court is empowered to resolve factual disputes when subject matter jurisdiction is challenged." EEOC v. Hosanna-Tabor Evangelical Lutheran Church & School, 597 F.3d 769, 776 (6th Cir. 2010).

[4] It is clear from the *accommodation* form filed in February 2009 that Ms. Paul requested a transfer to a different shift when she stated, "Unable to work without assistance. Can not work 3rd shift or whenever I would be the only Diagnostic technologist." (Supp. Dolbin Aff. ¶2; Exhibit 14).

other employees are unreasonable as a matter of law, and not mandated by the ADA." Brown v. Illinois Cent.  R.R. Co., 254 F.3d 654 661 (7th Cir. 2001).  To determine if Ms. Paul's request was reasonable and Kaiser's actions unlawful, the Court must construe the CBA provisions regarding work shifts and seniority.

Further, Ms. Paul requested that Kaiser permit her to continue performing the duties of a CT Technician.[5]  This job had been abolished, so functionally, Ms. Paul had requested Kaiser to create a new position for her.  Because the CBA mandates specific procedures for the creation of new positions, such as posting the new position and offering it to other employees (Exhibit B, pg. 49), accommodating Ms. Paul's request arguably would have violated the CBA and been unreasonable.  Therefore, to determine if Ms. Paul's request was reasonable and Kaiser's actions unlawful, the Court must construe the CBA provisions regarding the creation and deletion of positions.

Moreover, Ms. Paul claims that Kaiser's failure to recall her from the leave of absence constitutes discrimination and retaliation under O.R.C. §4112.  (Compl. ¶16, 23).  The CBA contains extensive provisions governing recall from layoffs and leaves of absence.  (Exhibit B, pg. 31-36, 51-57).  Therefore, to determine if Kaiser's actions were unlawful, the Court must construe the appropriate CBA provisions.

---

[5] Ms. Paul stated on the accommodation form, "I am able to preform my current job.  In near future being told to work in diagnostic Area.  Can not do this with my disability. Ask for accommodations." (Supp. Dolbin Aff. ¶2, Exhibit 14).  The most logical inference of what Ms. Paul meant from these statements is that she could perform the duties of a CT Technician, could not perform the duties of a CT Rad Tech, and was therefore requesting to remain in the soon to be abolished position.  Ms. Paul insists that she was fully capable of performing her duties as CT Rad Tech and cites several doctors' notes which state this. (Response, pg. 5).  However, these notes also state that she needed assistance from a colleague to perform diagnostic x-rays.  (Paul Aff., ¶35, 37; Exhibit 3, 5).  This latter *factual* statement proves that Ms. Paul was not fully capable of performing her duties as CT Rad Tech because if she had been, then she would not have needed assistance.

8

Ms. Paul's state law claims are intertwined with the CBA; therefore, Ms. Paul's state law claims are preempted. This preemption has two effects. First, the state law claims are converted into federal claims under the LMRA for the purposes of removal jurisdiction. Thus, this Court has subject matter jurisdiction over the claims. Second, each of the preempted state law claims must be dismissed. Allis-Chalmers, 471 U.S. at 210-11; DeCoe, 32 F.3d at 220.

### C. Failure to Exhaust Administrative Remedies

The Court turns next to the question of whether Ms. Paul's newly converted Section 301 claims must be dismissed because she failed to exhaust the remedies under the governing CBA. If a "discharged employee . . . resorts to the courts before the grievance procedures have been fully exhausted, the employer may well defend on the ground that the exclusive remedies provided by such a contract have not been exhausted." Vaca v. Sipes, 386 U.S. 171, 184 (1967).

In the present case, construing the evidence and all inferences in the light most favorable to the non-movant, Ms. Paul did not exhaust her remedies under the CBA. See Kraus v. Sobel Corrugated Containers, Inc., 915 F.2d 227, 229 (6th Cir. 1990). Ms. Paul filed a Step One grievance and appealed its denial to the Second and Third Steps, but she never arbitrated her claim. The CBA provides for arbitration after the Third Step. (Exhibit B, pg. 61). Therefore, Ms. Paul never exhausted her remedies under the CBA's grievance procedures prior to bringing suit.

Ms. Paul asserts that statutory discrimination and retaliation claims are not subject to the general grievance and arbitration provisions of a CBA. (Docket # 7;

9

Response, pg. 13). However, the case Ms. Paul cites to support this proposition, Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974), is inapposite. The Supreme Court of the United States recognizes that "Gardner-Denver and its progeny . . . do not control the outcome where . . . the collective-bargaining agreement's provision expressly covers both statutory and contractual discrimination claims." 14 Penn Plaza LLC v. Pyett, 129 S. Ct. 1456, 1469 (2009). The CBA in the present case expressly covers both statutory and contractual discrimination claims and clearly and unmistakably requires union members to arbitrate statutory anti-discrimination claims.

The CBA states that "all alleged discrimination claims arising under this Article shall be settled pursuant to the grievance procedures established in Article XXXVII of this Agreement." (Exhibit B, pg. 6). The above provision does not expressly state that statutory anti-discrimination claims will be subject to the arbitration procedures of Article XXXVII. However, the arbitration procedures are part and parcel of the grievance procedures pursuant to which all alleged discrimination claims *shall* be settled.

Furthermore, Ms. Paul's discrimination and retaliation claims arise under the CBA; indeed, Article V states that it is the "obligation of the Employer and the Union that the provisions of this Agreement shall be applied fairly and uniformly in accordance with federal and state employment laws relating to race, color, religion, sex, age, national origin, or physical and mental handicap." Id. There is no question that the CBA requires Ms. Paul, as a union member, to arbitrate her statutory discrimination claims.

Ms. Paul has not completed the arbitration process provided for in the CBA. Ms. Paul's Section 301 claims must be dismissed because she failed to exhaust the available remedies under the CBA.

**IV. CONCLUSION**

This Court has subject matter jurisdiction because Section 301 of the LMRA preempts Ms. Paul's state law claims.

Kaiser's Motion for Judgment on the Pleadings is granted. Ms. Paul's state law claims are dismissed because they are preempted by Section 301 of the LMRA. Further, Ms. Paul's claims under Section 301 of the LMRA are dismissed for failure to exhaust her administrative remedies under the controlling CBA.

IT IS SO ORDERED.

    /s/Lesley Wells
UNITED STATES DISTRICT JUDGE